# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TALLIE MCKINNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-18-0767-HE |
| | ) | |
| PROGRESSIVE DIRECT INSURANCE COMPANY d/b/a PROGRESSIVE, and CSAA GENERAL INSURANCE COMPANY d/b/a AAA INSURANCE, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Linda McKinney ("McKinney"), as mother and next friend of Tallie McKinney, then a minor, filed this action against defendants Progressive Direct Insurance Company ("Progressive") and CSAA General Insurance Company ("CSAA"), alleging breach of contract and bad faith. Tallie McKinney ("Tallie") has since reached her majority and has been substituted as the plaintiff. CSAA has moved for summary judgment on plaintiff's bad faith claim.

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Material facts are those which "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* To determine whether this standard is met, the court views the evidence in the light most favorable to the non-moving party. Estate of Booker v. Gomez,

745 F.3d 405, 411 (10th Cir. 2014). "[T]he plain language of Rule 56(c) mandates entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

**Background**

On June 26, 2017, Tallie was a passenger in a vehicle driven by her friend Sierra Shannon ("Shannon"). Shannon caused a single-car accident. As a result Tallie suffered injuries, including fractures of her right arm and pelvis, which required surgery.

McKinney was the named insured on an insurance policy issued by CSAA. Tallie was identified as a driver on the CSAA policy. Both Shannon and the vehicle she was driving were insured under an insurance policy issued by Progressive. Progressive offered plaintiff the full $100,000 limit of liability coverage, which plaintiff accepted in exchange for a release.[1]

Plaintiff submitted a claim to CSAA seeking uninsured("UM")/underinsured ("UIM") benefits. CSAA evaluated plaintiff's claim and determined the total evaluation range was $108,482.88 - $118,482.88. CSAA then extended an offer to plaintiff's counsel in the amount of $8,482.88. Plaintiff rejected this offer without making a counter-offer or discussing CSAA's evaluation further. A few months later, plaintiff filed this case alleging breach of contract and bad faith claims against CSAA and Progressive.

---

[1] *Plaintiff's release of Progressive is limited to coverage under the liability coverage part of its policy and specifically reserves plaintiff's claims for underinsured motorist benefits under both Progressive's policy and CSAA's policy, as well as her bad faith claims against CSAA and Progressive.*

2

During the course of discovery in this lawsuit, additional documentation was provided to CSAA for its ongoing review in connection with plaintiff's UM/UIM claim, and CSAA re-evaluated the claim and determined a new range of $133,888.04 to $158,888.04. CSAA then extended a new offer to plaintiff in the amount of $33,888.04.[2] CSAA never received a response from plaintiff or her counsel.

## Analysis

Plaintiff asserts that CSAA's initial evaluation and offer were unreasonable and were made in bad faith. Specifically, plaintiff contends that CSAA failed to conduct a reasonable investigation into plaintiff's claim, failed to perform a reasonable evaluation, and failed to promptly pay plaintiff's claim. CSAA contends that its investigation and evaluation of plaintiff's UM/UIM claim was reasonable and the subject of a legitimate value dispute between the parties.

"[A]n insurer has an implied duty to deal fairly and act in good faith with its insured and . . . the violation of this duty gives rise to an action in tort . . . ." Christian v. Am. Home Assurance Co., 577 P.2d 899, 904 (Okla. 1978). Further, the Oklahoma Supreme Court has recognized:

> there can be disagreements between insurer and insured on a variety of matters such as insurable interest, extent of coverage, cause of loss, amount of loss, or breach of policy conditions. Resort to a judicial forum is not per se bad faith or unfair dealing on the part of the insurer regardless of the outcome of the suit. Rather, tort liability may be imposed only where there is a clear showing that the insurer unreasonably, and in bad faith, withholds payment of the claim of its insured.

---

[2] *In her response, plaintiff states that her bad faith claim is predicated upon CSAA's pre-filing conduct, not its post-filing conduct.*

*Id.* at 905.

In order to establish a bad faith claim, an insured "must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of the insured's claim." Oulds v. Principal Mut. Life Ins. Co., 6 F.3d 1431, 1436 (10th Cir. 1993). In order to determine whether the insurer acted in good faith, the insurer's actions must be evaluated in light of the facts the insurer knew or should have known at the time the insured requested the insurer to perform its contractual obligation. *Id.* at 1437. The essence of the tort of bad faith is

> unreasonable, bad-faith conduct, including the unjustified withholding of payment due under a policy, and if there is conflicting evidence from which different inferences might be drawn regarding the reasonableness of insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case.

McCorkle v. Great Atl. Ins. Co., 637 P.2d 583, 587 (Okla. 1981).

However, the mere allegation that an insurer breached its duty of good faith and fair dealing does not automatically entitle the issue to be submitted to a jury for determination. Oulds, 6 F.3d at 1436. The Tenth Circuit has held:

> [a] jury question arises only where the relevant facts are in dispute or where the undisputed facts permit differing inferences as to the reasonableness and good faith of the insurer's conduct. On a motion for summary judgment, the trial court must first determine, under the facts of the particular case and as a matter of law, whether insurer's conduct may be reasonably perceived as tortious. Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed.

4

*Id.* at 1436-37 (internal citations omitted).

"A claim must be paid promptly unless the insurer has a reasonable belief that the claim is legally or factually insufficient." Willis v. Midland Risk Ins. Co., 42 F.3d 607, 611-12 (10th Cir. 1994). "To determine the validity of the claim, the insurer must conduct an investigation reasonably appropriate under the circumstances. If the insurer fails to conduct an adequate investigation of a claim, its belief that the claim is insufficient may not be reasonable." *Id.* at 612 (internal quotations and citation omitted).

Based upon the parties' submissions, and construing the facts most favorably against CSAA, the court concludes plaintiff has not produced evidence which would support an inference of unreasonable conduct on CSAA's part, such as would create a justiciable question as to the existence of the bad faith tort. Plaintiff instead relies largely on conclusory allegations, some of which are contrary to defendant's uncontested evidence. Specifically, plaintiff alleges, with no supporting evidence, that CSAA did not use the medical authorization it was given to obtain plaintiff's medical records and bills. Brett Greiwe, a supervisor in CSAA's Senior Casualty Department, however, states in his affidavit that CSAA did use the medical authorization. *See* Affidavit of Brett Greiwe, attached as Exhibit 5 to CSAA's Motion for Partial Summary Judgment, at ¶ 3. Further, plaintiff asserts that due to the nature of Tallie's injuries, any valuation should have exceeded the available liability insurance. CSAA's evaluations, including its initial valuation, however, did exceed the $100,000 in available liability insurance.

Additionally, plaintiff asserts that CSAA's failure to pay any UM/UIM benefits at all constitutes a failure to deal fairly and in good faith. However, it is undisputed that

5

CSAA initially offered to pay $8,482.88, and later offered to pay $33,888.04, to plaintiff but required plaintiff to sign a release prior to the payment. Oklahoma courts have concluded it is not unreasonable for an insurer to condition payment of UM/UIM proceeds on a signed release of future claims and that such a condition, without more, does not breach the obligation of good faith and fair dealing. *See* Gov't Emps. Ins. Co. v. Quine, 264 P.3d 1245, 1251 (Okla. 2011); Beers v. Hillory, 241 P.3d 285, 293 (Okla. Civ. App. 2010). Finally, plaintiff asserts that she incurred $147,134.14 in medical expenses and CSAA's evaluation is clearly unreasonable in light of these incurred expenses.[3] However, both plaintiff's list of medical expenses and CSAA's affidavits from plaintiff's medical providers show that plaintiff's medical providers reduced or discounted her bills and that plaintiff only paid $33,685.39 in medical expenses. Basing its evaluation on medical expenses actually paid, rather than those billed but not pursued, is not unreasonable.

The court concludes that CSAA is entitled to summary judgment on plaintiff's bad faith claim. Its Motion for Partial Summary Judgment [Doc. #36] is therefore **GRANTED**.

**IT IS SO ORDERED.**

Dated this 13th day of May, 2019.

_____
JOE HEATON
CHIEF U.S. DISTRICT JUDGE

---

[3] *Plaintiff has not submitted supporting documentation for these allegedly incurred expenses.*